IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No.: 1:09-0082 |
| v. ) | Judge Trauger |
| ) | |
| MICHAEL R. FLOYD d/b/a FLOYD & ) | |
| FLOYD CONTRACTORS, ) | |
| ) | |
| Defendant. ) | |

### RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTION IN LIMINE REGARDING LOSS OF USE DAMAGES

Comes now the Defendant, MICHAEL R. FLOYD d/b/a FLOYD & FLOYD CONTRACTORS ("Defendant"), by and through counsel, and responds in opposition to the Plaintiff's Motion in Limine Regarding Loss of Use Damages (Doc. No. 46) as follows:

### I. Introduction

The issue before the Court is very straightforward. The Plaintiff alleges that it lost the use of a portion of its fiber-optics cable for approximately 2.9 hours. In turn, the Plaintiff seeks to put a dollar value on this use. Accordingly, the entire question before the Court is what information is relevant in determining the value of the particular use in question.

First, the law is very clear that damages are not to be awarded for the mere *time* of a loss of the property in the abstract; in fact, time in and of itself has no compensatory value. Instead, the courts have concentrated on the value of the *actual usage* of the property by the specific plaintiff. For example, Tennessee courts have stated that a plaintiff who lost the use of a car for a total time of 7 days was not to be awarded damages for a total of 7 days; instead, the court stated that the plaintiff could only be awarded damages for 1 day, the amount of time that the

plaintiff actually routinely used the car.  In another example, the Tennessee Supreme Court held that it would be error for a plaintiff to be awarded compensation based upon a full 24 hour period of time in which the recreational use of a car was lost; rather the jury should have been instructed to only award damages based upon the plaintiff's actual routine usage of the property in question.  Notwithstanding, the Plaintiff in the present case seeks to have a jury value the loss of the use of the property based upon the mere *time* of the loss by *theoretically* renting other companies' property for 2.9 hours for approximately $300,000.00, even though the true facts are that the Plaintiff never actually used these other companies' property or otherwise incurred this cost.

Second, the law is clear that the entire purpose of damages is to provide reasonable compensation for damages *actually* incurred, and that compensatory damages are not designed to provide a windfall, or put a plaintiff in a better position than if an accident had never occurred.  To determine whether a plaintiff's use of a property has been actually damaged, again it is necessary to do more than simply determine whether time is lost.  Instead, the jury must be allowed to determine how the Plaintiff was actually using the cable prior to the incidents in question, and, correspondingly, whether this actual use was damaged in any way.  Unlike automobile cases, where a plaintiff might use his or her personal property for personal uses such as recreation, most businesses use their property for business uses rather than personal uses.  In the present case, it is clear that the Plaintiff's only use of the property in question was to generate revenue.  In other words, the jury does not have to guess at the value of the Plaintiff's use of the property in the abstract, as it is easy to determine the Plaintiff's actual use prior to the incident.  Therefore, clearly it is relevant for the jury to hear evidence as to the Plaintiff's actual use, and, correspondingly, whether this use was affected in any way by reason of the incident.

In turning to the Plaintiff's Motion, the Plaintiff seeks to allow it to submit *abstract* evidence of property it never rented to value the use of its property, but exclude *actual* evidence of the Plaintiff's actual business use of the property and the fact that the Plaintiff did not incur any actual losses of this business use (as the Plaintiff actually used the cable to generate the same amount of revenue during the time period in question, as if the accident had never occurred). As will be discussed in more detail, the Plaintiff's Motion lacks foundation in law or basic fundamental notions of fairness and justice, and, therefore, the same must be denied by the Court.

**II.      The Plaintiff's actual usage of the property, and whether or not it incurred any actual damages to such usage, is relevant.**

The Plaintiff first argues that the actual use of the cable prior to the incident, and whether such usage was actually damaged, is irrelevant. As stated by the Sixth Circuit in United States v. Whittington, 455 F.3d 736, 739 (6th Cir. 2006):

> The standard for relevancy is "extremely liberal." Douglass v. Eaton Corp., 956 F.2d 1339, 1344 (6th Cir. 1992). "'[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' is relevant." Robinson v. Runyon, 149 F.3d 507, 512 (6th Cir. 1998) (quoting Fed. R. Evid. 401). "'[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth.'" DXS, Inc. v. Siemens Med. Sys., 100 F.3d 462, 475 (6th Cir. 1996) (quoting Douglass, 956 F.2d at 1344).

As discussed in the following sections, the Plaintiff's arguments not only lack legal basis, but are specifically contradicted by clear Tennessee law. First, notwithstanding the Plaintiff's arguments to the contrary, Tennessee law provides that rental value is simply one non-exclusive factor for the jury to consider in measuring such damages. Second, the actual measure of damages for loss of use is reasonable compensation, for which the jury may consider all relevant

3

facts, including the Plaintiff's actual and only use of the property (to generate revenue) and the fact that the plaintiff's use of such property was not affected in anyway by the incident. Third, the Court may not exclude relevant evidence that conflicts with Tennessee law that the Plaintiff may not be awarded damages for which it had a duty to use reasonable care and minimize in any event. Fourth, evidence of the Plaintiff's actual usage is necessary to examine the Plaintiff's claim that it reserved capacity on its cable for emergencies. Finally, evidence of the Plaintiff's actual usage, including actual revenue from the property, is a potential relevant indicator of "rental value."

### A. Tennessee Law provides that reasonable rental cost is simply one factor for the jury to consider in measuring damages from a loss of use of personal property.

The Plaintiff's primary argument in support of its Motion is that it has somehow made an election[1] that excludes the evidence in question, as it "has opted to base its claim for loss of use on the cost of renting substitute property, *a measure of damages for loss of use recognized by Tennessee law*." (Doc. 47, pg. 1.) However, a cursory review of Tennessee law reveals that the

---

[1] The Plaintiff argues that it "is entitled to elect which measure of recovery it chooses to pursue," and cites Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901 (Tenn. 1999). However, such case clearly establishes that election of remedies is actually a doctrine to protect defendants rather than the other way around: "The purpose of the doctrine is to prevent double redress for a single wrong, and it requires the plaintiff in such a scenario to choose one theory of recovery under which to proceed." Id. at 906.

The Plaintiff also cites Betty v. Metropolitan Government of Nashville & Davidson County, 835 S.W.2d 1, 6 (Tenn. App. 1992), a case partially reversed by the Tennessee Supreme Court, see Edwards v. Hallsdale-Powell Util. Dist., 115 S.W.3d 461, 467 (Tenn. 2003), for the proposition that "the proper measure of damages in a particular case depends on the property owner's election of remedies." However, the Plaintiff fails to explain that the Court of Appeal's ruling was limited to a statutory cause of action, and that the entire statement of the Court of Appeals was that "Tenn. Code Ann. § 29-16-123(a) contains two separate causes of action and two alternative measures of damages. The proper measure of damages in a particular case **depends on the property owner's election between the alternative statutory remedies.**" Betty at 6. Clearly, Betty is not a general holding as claimed by the Plaintiff.

4

basis for the Plaintiff's argument is simply incorrect, as rental cost is simply a single non-exclusive factor under the proper measure of damages recognized by Tennessee Law.

"When a tort action is brought in federal court pursuant to diversity jurisdiction, basing liability on state law, the court must apply state law in regard to availability and computation of damages." <u>Losey v. North American Philips Consumer Electronics Corp.</u>, 792 F.2d 58, 62 (6th Cir. Tenn. 1986). In consulting the state law in question, the Tennessee Pattern Jury Instruction regarding Loss of Use clearly states:

> 14.43 LOSS OF USE
>
> **The measure of damages for loss of use is reasonable compensation** to the plaintiff for being deprived of the use of the [automobile] [property] during the time reasonably necessary for repair of the damage caused by the incident. In determining this amount, you **may consider** the reasonable rental cost of an [automobile] [property] for that period of time and the use or lack of use the plaintiff would have made of it except for the incident.

T.P.I. Civil 14.43.

In other words, Tennessee law clearly provides that rental value is not the "measure of damages" for loss of use of personal property; rather, rental value is simply one factor that the jury "may consider" in determining the true measure of damages - "reasonable compensation." T.P.I. Civil 14.43. The Plaintiff's Motion is basically asking the Court to reword the Pattern Jury Instructions to state: "[t]he measure of damages for loss of use is [the cost of renting substitute property]," and conveniently ignore the true measure of damages, of which rental cost is but one factor that a jury "may consider." Such argument is in complete conflict with Tennessee law, and, accordingly, the Plaintiff's Motion must be denied.

Despite the fact that only state law is applicable in regard to the availability and computation of damages, <u>Losey v. North American Philips Consumer Electronics Corp.</u>, 792

5

F.2d 58, 62 (6th Cir. Tenn. 1986), the Plaintiff's Motion is almost entirely void of any citation to state law. The Plaintiff's Motion also fails to address Tennessee's Pattern Jury Instruction that clearly states that rental value is simply one non-exclusive factor to determine the true measure of damages under a loss of use claim. T.P.I. Civil 14.43.

Instead of discussing or citing Tennessee caselaw, the Plaintiff cites non-controlling and inapplicable caselaw from other jurisdictions. Clearly, either party can easily find cases across the country in support of their respective positions. For example, in MCI Worldcom Network Servs. v. W. M. Brode Co., a contractor had inadvertently severed a fiber-optics cable owned by MCI. 413 F. Supp. 2d 868 (N.D. Ohio 2005). The damaged cable was unable to carry traffic for approximately eight and one-half hours; however, MCI was able to reroute the traffic during the time period and there was no evidence that MCI incurred any loss of revenue. Notwithstanding, MCI sought over $800,000.00 in loss of use damages based upon "the rental value of substitute network cable capacity purchased from a competitor's network . . . ," even though such substitute network was never actually rented.

In reviewing Ohio state law, the district court first noted that "[i]t is a fundamental principle of the law of damages in Ohio that 'a plaintiff should be made whole for his injuries but should not receive a windfall.'" Id. at 871 (citation omitted). In reviewing the cases cited by the respective parties, the Court ultimately found that a case from the U.S. District Court for the Southern District of Florida was more persuasive, MCI Worldcom Network Servs. vs. Lind, 2002 U.S. Dist. LEXIS 26467, No. 00-47-7, (S.D. Florida, December 17, 2002) (Exhibit 1). The district court explained that, in Lind,

> The Court found that rental value was not an appropriate measure of loss-of-use damages as "no party in MCI's position, whether wealthy or destitute, would have reasonably considered renting a replacement transmission system, because the

6

loss of the cable did not affect transmission of its signals. Thus, in this case, rental value is not indicative of loss- of-use damages." 2002 U.S. Dist. LEXIS 26467, at 12, 13. In addition, the Court in Lind held that where the value of replacing the cable amounted to $ 1,400 but MCI sought nearly one million dollars, the result would mean an unjustifiable windfall for MCI and would be grossly unfair. 2002 U.S. Dist. LEXIS 26467, at 14.

Id. at 871-872. In adopting the reasoning of Lind, the Ohio district court explained that "[i]n the Lind case, the District Court drew a distinction between the rental value as a measure of loss-of-use and the use of rental value as indicative of loss of use." Id. at 872. Of importance to the present case, the Ohio district court pointed out that "[u]sing rental value as an indication of loss of use is akin to placing the cart before the horse. This Court must first determine that a loss of use has occurred." Id. The district court also noted that it found support for its findings in other circuits:

> [T]he Fourth Circuit Court of Appeals in MCI Worldcom Network Services, Inc. v. OSP Consultants, 78 Fed. Appx. 876 (4th Cir. 2003) upheld a District Court's ruling that MCI was not entitled to loss-of-use damages as it was able to reroute traffic and there was no evidence that MCI suffered damages during the time the cable was unavailable.
>
> * * *
>
> The Virginia State Supreme Court upon certification from the Fourth Circuit held, pursuant to Brooklyn Eastern District Terminal v. United States, 287 U.S. 170, 77 L. Ed. 240, 53 S. Ct. 103 (1932), that as MCI does not "reserve particular cables for use exclusively in emergencies, it was not entitled to loss- of-use damages. In Brooklyn Terminal, a dredge owned by the United States collided with a tugboat used to pull car floats for railroads. Brooklyn Terminal worked its remaining fleet of tugs overtime rather than hire a substitute for the damaged tug. There was no evidence that the owner incurred additional expenses for the overtime work of his remaining tugs. Unlike the spare boat case of The Cayuga, 5 F. Cas. 326, F. Cas. No. 2535 (E.D.N.Y. 1868) affirmed 5 F. Cas. 329, F. Cas. No. 2537 (C.C.E.D.N.Y. 1870) affirmed 81 U.S. 270, 20 L. Ed. 828 (1871) where the Supreme Court held the ferry owner was entitled to compensation for the loss-of-use measured by the cost of hiring a substitute boat even though no substitute was in fact hired, Brooklyn Terminal held that the Cayuga doctrine was not to be extended "to boats acquired and maintained for the general uses of the business." Brooklyn Terminal at 174-176. The OSP Consultants case determined that the

7

Brooklyn Terminal decision was the appropriate standard for MCI loss-of-use damages. The Virginia Supreme Court found that MCI used its excess network capacity for the general use of its business to "accommodate varying levels of telecommunications traffic. While it is true that the excess capacity enables MWNS to reroute traffic in the event of emergencies, MWNS does not reserve particular cables for spare use exclusively in emergencies, as in the 'spare boat' cases." <u>MCI Worldcom Network Servs. v. OSP Consultants</u> 266 Va. 389 at 396, 585 S.E.2d 540 (2003). The Virginia Supreme Court refused to allow the expenses saved by MCI as a result of its foresight in creating its redundant cable network to be charged to Defendant "as if they had not been saved at all." <u>Id</u>.

<u>Id</u>. at 873-874.

In any event, regardless of the ability of the parties to find cases in support of their positions in other jurisdictions, the sole question before the Court is the determination of the proper measure of damages for loss of use under Tennessee Law, which is discussed in the next section.

**B.     <u>Tennessee Law provides that the true measure of damages for loss of use is reasonable compensation; the jury must be free to consider all relevant facts, including but not limited to the use or lack of use the plaintiff would have made of the property except for the incident.</u>**

As discussed previously, the Tennessee Pattern Jury Instruction regarding Loss of Use clearly states:

> 14.43 LOSS OF USE
>
> **The measure of damages for loss of use is reasonable compensation** to the plaintiff for being deprived of the use of the [automobile] [property] during the time reasonably necessary for repair of the damage caused by the incident. In determining this amount, you **may consider** the reasonable rental cost of an [automobile] [property] for that period of time **and the use or lack of use the plaintiff would have made of it except for the incident**.

T.P.I. Civil 14.43. In other words, the Instruction makes clear that the measure of damages for loss of use is "reasonable compensation" for which a jury should be allowed to consider all relevant evidence to determine the same. T.P.I. Civil 14.43. The Instruction goes on to state the

8

reasonable compensation is for (1) "being deprived of the use of the [property]," (2) "during the time reasonably necessary for repair of the damage caused by the incident." The Jury Instructions further state that "[i]n determining this amount," the jury "may consider" (a) "the reasonable rental cost of an [property] for that period of time" and (b) "the use or lack of use the plaintiff would have made of it except for the incident." Clearly, the Jury Instructions provide that rental cost and actual usage are not exhaustive factors for the jury to determine reasonable compensation, due to the use of the broad phrase, "may consider."

The courts have provided additional guidelines in measuring the value of an alleged loss of use. While the Tennessee Supreme Court allowed a claim of loss of the recreational use of a private automobile in <u>Perkins v. Brown</u>, in the end the Supreme Court actually reversed the trial court based upon errors that included the trial court's failure to take the specific plaintiff's actual recreational usage into consideration when instructing the jury regarding such issue:

> **It is manifestly unjust to the defendant** to have either rental or usable value fixed in behalf of the plaintiff on the basis of a full daylight rental charge for an automobile, as was permitted in this case, **when the proof shows that the plaintiff and his family customarily used the car only during a few hours of a day for pleasure and shopping drives.**
>
> * * *
>
> **We are not satisfied that a result just to the defendant has been reached** under the proof admitted and the instructions given the jury by the trial judge. The judgment of the court of civil appeals must, therefore, be reversed and the cause remanded for a new trial.

132 Tenn. 294, 298-299 (Tenn. 1915).

In <u>Scott v. Houston</u>, the Court of Appeals recently reached a similar conclusion that the actual usage in question must be considered:

> We will now address the plaintiff's argument that the trial court short-changed her when it based her loss of use damages on her testimony that she only drove the

car on Sundays and refused to compensate her for the other six days. The defendant argues that the evidence supports the trial court's limitation of damages to one day a week. * * * **It is clear from the cases that to the extent loss of use damages are recoverable, they must be true losses and not something the wronged party could have avoided with reasonable effort and diligence.** Given that the plaintiff was awarded the full money value of the automobile on the day it was repossessed, plus prejudgment interest to compensate her for loss of use of her money . . . and the testimony that she had another car she was driving on the day the Lexus was taken, **it is clear that the plaintiff *was not damaged* by every minute of every day that the Lexus was not sitting in her driveway between the date of its repossession and the date of trial**.

2010 Tenn. App. LEXIS 153, 22-23 (Tenn. App. Feb. 26, 2010) (Ex. 2, emphasis added).

In <u>Tire Shredders, Inc.</u>, the Tennessee Court of Appeals noted that prior Tennessee law indicated that the owner, Tire Shredders, Inc., would not be allowed to recover compensation for the damages it incurred from a loss of use of a commercial shredder simply based upon the fact that the shredder had been destroyed and could not be repaired. 15 S.W.3d 849, 856-857 (Tenn. App. 1999). In recognizing an exception for commercial property under Tennessee Law, it is relevant that the Court of Appeals specifically concentrated on the actual use of the property rather than the mere time the plaintiff was without the property: "[w]e agree that, under the unique circumstances of the instant case, there is logic in the position asserted by TSI. TSI's shredding machine was a piece of commercial property that, at the time of its destruction, **was actually being used for profit**." <u>Id</u>.

Moreover, this Court has previously found that the Plaintiff's loss of use claim is a fact question to be broadly considered by the jury:

> The propriety of awarding the significant loss-of-use damages that Level 3 seeks here is an issue about which reasonable minds could differ. As Judge Nixon noted in *Corporate Air*, tort damages in this context are designed to compensate for losses actually suffered and here, facially, the plaintiff suffered no direct losses (other than the repair costs).

(<u>See</u> Docket No. 40, Memorandum at pg. 17.)

10

The courts have further recognized the common sense purpose of compensatory damages, which is to put a plaintiff back in the same position as if an accident had never occurred (but no more). As stated by the Tennessee Court of Appeals in Beaty v. McGraw, "[c]ompensatory damages are intended to compensate the wronged party for the loss or injury sustained by the wrongdoer's conduct. The goal is to restore the wronged party, as nearly as possible, to the position the party would have been in had the wrongful conduct not occurred." 15 S.W.3d 819, 829 (Tenn. App. 1998) (citation omitted; partially citing Inland Container Corp. v. March, 529 S.W.2d 43, 44 (Tenn. 1975)). In another diversity case applying Tennessee law, the court stated in Corporate Air Fleet, Inc. v. Gates Learjet, Inc. that "[t]he purpose of awarding damages is to compensate for damages actually incurred, not to provide a plaintiff with a windfall. * * * The plaintiffs cannot be awarded damages for losses they did not incur." 589 F. Supp. 1076, 1081-82 (M.D. Tenn. 1984); cited by Tire Shredders, Inc. v. Erm-North Cent., Inc., 15 S.W.3d 849 (Tenn. App. 1999).

In turning to the information for which the Plaintiff has objected, clearly the same is relevant under Tennessee law. In essence, the Plaintiff broadly asserts that it is objecting to (1) any evidence that it did not give any credits or refunds to its customers during the alleged loss of use period, (2) any evidence that it did not actually rent substitute property, and (3) any evidence that it did not incur any actual lost revenue, profits or out-of pocket costs as a result of its alleged loss of use. But as discussed previously, Tennessee law clearly provides that the Plaintiff's actual use of the property is to be considered in determining reasonable compensation, just as the Tennessee Supreme Court considered the extent of the recreational use of the automobile in Perkins, or the Court of Appeals consideration of the use of the commercial shredder to generate

11

a profit in Tire Shredders, Inc. Furthermore, such evidence is required by the overall policy of Tennessee Law to compensate for damages actually incurred and not to provide a windfall for losses not incurred.

This Court found that similar evidence was relevant and ultimately controlling in Corporate Air Fleet, Inc., supra. In such case, the plaintiff had lost the use of a Learjet for nearly eleven months. The Court first recognized that, "when a defendant tortiously injures an item of property, a valuable right or interest is lost - the right to use that property." Id. at 1081. To that end, the Court found that "[r]ecovery for the value of the loss of use of a chattel constitutes a separate item of damages when that chattel has been injured through the tortious conduct of the defendant and is reparable." Id. citing Perkins v. Brown, 132 Tenn. 294, 296, 177 S.W. 1158, 1159 (1915). However, in turning "to the question of the proper measure of damages when a plaintiff is negligently deprived of the use of a chattel," the Court recognized that "[t]he purpose of awarding damages is to compensate for damages actually incurred, not to provide a plaintiff with a windfall." Id. In reviewing such proper measure of damages, the Court did not look at whether there was a loss in the abstract, but rather specifically reviewed whether the plaintiff actually incurred a rental cost, and rejected other courts that had found that an actual rental was not necessary:

> In Koninklijke, the lessee of an aircraft brought a products liability action against participants in the design and manufacture of the aircraft's engine which exploded. The Second Circuit held that the owner or lessee of a commercial vehicle may recover loss of use damages based on the rental value of a substitute vehicle. 610 F.2d at 1056. These damages for loss of use were held to be recoverable without proving that actual financial loss was suffered and without proving that the plaintiff needed a substitute aircraft to cover the loss of the damaged one. Id. However, the Koninklijke court restricted plaintiff's recovery to the amount of rental "actually paid for the period during which the . . . aircraft was out of service. . . ." Id. Consequently, this Court is not persuaded by the language in Koninklijke intimating that actual financial loss need not be proved.

12

Id. **It is the opinion of this Court that the plaintiff may recover damages for the loss of use of its aircraft due to the negligence of the defendant based upon the reasonable rental value of a substitute aircraft; however, such a recovery is limited to the time in which a substitute plane was actually rented**. See, e.g., Young v. Servair, 33 Mich. App. 643, 190 N.W.2d 316, 317 (Mich. Ct. App. 1971) (plaintiff entitled to recover for cost of rental airplane only during time which a substitute was actually rented); Radar v. Harper Aviation, Inc., 246 So. 2d 362, 365 (La.Ct.App. 1971) (when no replacement aircraft was rented, damages based upon rental value were not awarded). **The plaintiffs cannot be awarded damages for losses they did not incur.**

Corporate Air, 589 F. Supp. at 1081-1082.

Likewise, in the present case, evidence that the Plaintiff did not rent substitute property or incur any actual losses to the Plaintiff's use of the property to generate revenue is both relevant and necessary under Tennessee Law.

### C. In addition, the Court must not exclude relevant evidence regarding the Plaintiff's duty to use reasonable care to avoid loss and to minimize damages, including any evidence regarding losses that could have been or were prevented by reasonable efforts or expenditures.

Tennessee law provides that evidence of losses that could or were prevented by reasonable efforts or expenditures by the Plaintiff are relevant, as the Plaintiff had a legal duty to mitigate losses. The Tennessee Pattern Jury Instructions regarding Loss of Use clearly state the following:

> 14.52 PROPERTY DAMAGE-DUTY TO MITIGATE
>
> A person whose property has been damaged by the wrongful act of another is bound to use reasonable care to avoid loss and to minimize damages. A party may not recover for losses that could have been prevented by reasonable efforts or by expenditures that might reasonably have been made.

T.P.I. Civil 14.52. Again, as stated by the Court of Appeals in Scott, supra "[i]t is clear from the cases that to the extent loss of use damages are recoverable, they must be true losses and not something the wronged party could have avoided with reasonable effort and diligence."

13

In effect, the Plaintiff seeks for the Court to hide the fact that it did not incur any actual costs to rent substitute property, nor did it incur any actual damages from the specific use in question. This argument, that it should be awarded damages for avoiding loss and minimizing actual losses turns the entire law of mitigation of damages on its head, and is unavoidably in conflict with Tennessee law.

The U.S. Supreme Court rejected a request to award damages for costs that had been avoided in Brooklyn Eastern Dist. Terminal v. United States, 287 U.S. 170, 173-177 (U.S. 1932). In Brooklyn Eastern, the district court had awarded the plaintiff shipowner demurrage while the owner's vessel was being repaired at the rate of $150 a day, which was "the market hire of another tug." However, the owner never retained a substitute tug but instead used its other two tugs overtime, and "thus kept down the cost while doing business as before." The Court of Appeals excluded such loss of use damage.

On appeal, the Supreme Court noted that the issue was "whether the full-time hire of an extra boat must be charged to the respondent as damage . . . when there was no need of such a boat to keep the business going, and none in fact was used and paid for." The Court answered the question in the negative, finding that such an award would be "erroneous and extravagant."

The Court first noted, as indicated in the previous section, that the determination required an examination of the actual usage of the property in question: "[o]nly when thus enlightened can we choose the yardstick most nicely adjusted to be a measure of reparation . . . . Only then can we know whether the interference with profit or enjoyment is to be ranked as substance or shadow." Ultimately, the Court concluded that, based upon the particular uses and affects upon those uses, a loss of use claim might be applicable:

14

> Demurrage on the basis of the cost of a substitute, actual or supposititious, may be no more than fair indemnity when gains have been lost or enjoyment seriously disturbed. Demurrage on a like basis may be so extravagant as to outrun the bounds of reason when loss of profit has been avoided without the hire of a substitute and the disturbance of enjoyment has been slight or perhaps fanciful.

Id. at (citations omitted). Of particular importance to the issues at hand, the Court stated that "[a] wide range of judgment is conceded to the triers of the facts in the choice of the standard to be applied and in the method of applying it."

Notwithstanding the wide latitude given to the trier of fact, the Court found that the district court had abused its discretion and affirmed the reversal of the loss of use award. In doing so, the Court specifically rejected the "doctrine of the 'spare boat' cases" argued by the shipowner. The Court indicated that, in the English cases discussing the doctrine, "as in our own, there has been a refusal to extend the doctrine to boats acquired and maintained for the general uses of the business." The Court concluded that:

> The [shipowner] was engaged in an established business using tugs for a single purpose. * * * Mindful of the need to minimize the damages, it used to the full its available resources, and was able by special effort to do the work. We are unable to accept the argument that the expenses it saved are to be charged to the respondent as if they had not been saved at all.

Id. at 177.

**D.  The Court must not exclude relevant evidence (or lack of evidence) related to Plaintiff's claim that it had reserved capacity for emergencies.**

As discussed in more detail in the Memorandum supporting the Defendant's Motion in Limine No. 2 (Doc. 55), the Plaintiff has argued that it should be allowed to recover loss of use damages, based upon an argument that:

> [T]he plaintiff maintains, at considerable expense, it reserved the substitute capacity on the Cable "exclusively for use in emergencies." (Id.)  Therefore, the substitute capacity is akin to a "spare boat," and the plaintiff should not be punished for being proactive and avoiding the need to obtain substitute capacity

after the outage, which would have been highly problematic for Level 3's customers. (Id. At 13 citing *Brooklyn E. Dist. Terminal v. U.S.,* 287 U.S. 170, 176-77 (1932) (finding that a shipowner who used a spare boat that he had obtained for emergencies prior to the accident that damaged the primary boat was entitled to loss-of-use damages).[2]

(See Docket No. 40, Memorandum at pg. 12.) In part based upon the Plaintiff's arguments regarding the claim that it had reserved space on the cable for emergencies, the Court held the following:

> [A]s the Supreme Court recognized almost 80 years ago and as numerous district courts have recognized in the telecommunications context, it is important to take an expansive view of the concepts of "renting" or replacing capacity during a period of loss or injury. These courts recognize that a proactive business owner who takes care to ensure that the loss of the primary chattel will not result in a service disruption to customers should be entitled to the loss-of-use damages to which less proactive business owners are, unquestionably, entitled.
>
> Here, Level 3 maintains, it paid for and reserved space on the Cable that allowed it to transmit data despite the injury to another part of the Cable. If it had not done so and had to go and rent substitute capacity, it would be entitled to that rental cost if it proved the defendant's negligence. *Tire Shredders*, 15 S.W.3d at 854. Additionally, the defendant's alleged conduct left the plaintiff in a more vulnerable position, unable to respond to any other emergencies that could have developed on the line during the period of repair. Under *Brooklyn Eastern* and the subsequent telecommunications cases, the court concludes that this theory of damages recovery is not invalid as a matter of law, and, therefore, the jury should be free to consider "loss of use" is making its damage determination in this case.

Accordingly, the Plaintiff's actual prior usage of the cable is relevant in order for anyone to assess whether the Plaintiff's non-damaged fibers were truly reserved for emergencies, or whether the Plaintiff's non-damaged fibers were simply vacant or dormant due to lack of business. In other words, the substitute capacity alleged by the Plaintiff might not be akin to a "spare boat," but rather the extra capacity could have simply been a fleet of extra boats sitting in

---

[2] With great respect to the Court, the Defendant's reading of Brooklyn Eastern Dist. Terminal v. United States, 287 U.S. 170 (U.S. 1932) indicates the Supreme Court found that the spare boat doctrine was not applicable to the particular shipowner and thus the Supreme Court rejected the shipowner's loss of use claim.

16

the Plaintiff's harbor which were collecting dust due to a lack of customers. Or, as discussed by the Supreme Court in *Brooklyn Eastern*, the facts may indicate that the Plaintiff was engaged in a established business, and mindful of the need to minimize its damages, was able to use its resources to avoid losses, and thus the expenses it saved should not be charged to the Defendant as if it they had not been saved at all (and as further required by Tennessee's law regarding mitigation of damages).

### E. The Court must not exclude contrary evidence regarding the "rental value" of the Plaintiff's property.

Even if the Court agreed with the Plaintiff's arguments that it should be allowed to offer the rental value of its property and exclude all other evidence regarding the usage of the property, clearly the Court must deny the Plaintiff's Motion, as the evidence concerning the Plaintiff's actual revenue from the property would be relevant to determine rental value, not in the abstract but rather based upon the Plaintiff's own value derived from the use that it alleges it lost.

### III. The Plaintiff's actual usage of the property, and whether or not it incurred any actual damages to such usage, is not confusing or misleading to the jury

The Plaintiff next argues that the fact that it did not rent substitute property or incur any actual loss of revenue would be confusing or "misleading" to the jury. To the contrary, the Plaintiff is concerned that the jury will rightfully find that the Plaintiff incurred no actual damages and utilize their common sense to find that the damages the Plaintiff's seeks would be a windfall (putting the Plaintiff in a better position, in the amount of approximately $300,000.00, than if an accident had never happened in the first place).

The Plaintiff primarily relies upon an Eighth Circuit case, Le Sueur Creamery, Inc. v. Haskon, Inc., 660 F.2d 342, 351-352 (8th Cir. 1981). However, a closer inspection of the case

17

reveals that the Eighth Circuit was not necessarily agreeing with the trial court's exclusion of tax returns which indicated that the plaintiff did not sustain any loss profits, but rather the Eighth Circuit was simply finding that the issue was within the discretion of the trial court. After noting at the outset of the opinion that, "[w]hile the issues are not free from doubt, we affirm the award . . . ," the Court made the following comments:

> We agree that the appellee's tax returns for the time period when the pasteurizer was defective **are relevant to the issue of whether LeSueur lost any profits.** We cannot agree, however, that the failure to admit the returns was such a clear abuse of discretion as to constitute reversible error. See Control Data Corp. v. International Business Machines Corp., 421 F.2d 323, 326 (8th Cir. 1970).
>
> The overriding issue in this case is not whether LeSueur made any profit during the years in controversy, but rather whether LeSueur would have made a larger profit but for the actions of Haskon. Hence, the probative value of the tax returns is not great. Furthermore, the appellee's tax returns showing that LeSueur made a profit when the pasteurizer was defective may well have misled or confused the jury and prejudiced LeSueur. Therefore, under Rule 403 of the Federal Rules of Evidence, the tax returns could be properly excluded.

Le Sueur, 660 F.2d at 351-352 (emphasis added).

The Plaintiff wishes to use abstract evidence of rental costs that were not incurred, but exclude actual evidence of whether it incurred rental cost or whether it incurred any actual loss of the only use of the property in question, which was to generate revenue. Only by excluding the actual evidence concerning whether the Plaintiff actually sustained a loss could the jury be mislead or confused.

## IV. Conclusion

Based upon the reasons discussed, the Plaintiff's Motion must be denied by the Court.

Respectfully submitted,

DuBOIS, DuBOIS & BATES, P.C.

By: /s/ David A. Bates
David A. Bates, BPR No. 021156
C. Nicholas Fossett, BPR No. 021472
Attorneys for Defendant
810 South Garden Street
P.O. Box 339
Columbia, TN 38402-0339
(931) 388-2526

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of this document via the Court's CM/ECF system to the following on S:

James J. Proszek, Esq.
Brandon R. Rule, Esq.
Hall, Estill, Hardwick, Gable
Golden & Nelson, P.C.
320 South Boston Avenue, Ste. 200
Tulsa, OK 74103-3706

John McCann, Esq.
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103

/s/ David A. Bates