IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **LEVEL 3 COMMUNICATIONS, LLC,**<br><br>    **Plaintiff**<br><br>v.<br><br>**MICHAEL R. FLOYD, d/b/a FLOYD &**<br>**FLOYD CONTRACTORS,**<br><br>    **Defendant.** | Case No. 1:09-cv-0082<br>JURY DEMAND (12)<br><br>Judge Trauger |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S HEARSAY OBJECTION TO TARIFFS AND PRICE GUIDES**

Plaintiff Level 3 Communications, LLC ("Level 3") respectfully submits this brief in response to Defendant Michael Floyd's ("Floyd") objection in the Pre-Trial Order that the tariffs and price guides Level 3 used to calculate its loss of use damages (Exhibits P-41, P-43) are inadmissible hearsay.

**INTRODUCTION**

This action arises from a series of incidents which occurred over three days from August 14 through August 16, 2007 in which Floyd damaged a Level 3 underground fiber-optic telecommunications cable (the "Cable") while excavating with a trackhoe directly over the marked location of the Cable.

Level 3 seeks actual damages of $345,906.83, consisting of: (1) $45,483.07 in costs it incurred to repair the Cable and the Conduits and (2) $300,423.76 in compensation for the loss of the use of the Cable. Level 3 also seeks punitive damages.

Level 3 has based its loss of use damages on the reasonable cost of renting comparable capacity on another carrier's cables sufficient to replace the capacity of those transport systems that were actually in use and completely interrupted when Floyd damaged the Cable for the 2.90

hours it took Level 3 to repair the damage to the Cable. In other words, Level 3 has based its loss of use calculation on the rental cost of substitute property as contemplated by T.P.I.-Civil 14.43. This Court has already held that the jury is free to consider Level 3's loss of use damages in determining the appropriate amount of damages in this case. [D.E. 40] at 17-18.

Tennessee's Civil Pattern Jury Instructions regarding this issue provide that:

The measure of damages for loss of use is reasonable compensation to the plaintiff for being deprived of the use of the [automobile] [property] during the time reasonably necessary for repair of the damage caused by the incident. **In determining this amount, you may consider the reasonable rental cost of an [automobile] [property] for that period of time and the use or lack of use the plaintiff would have made of the property except for the incident**.

T.P.I.-Civil 14.43 Loss of Use (2010) (emphasis added); see Tire Shredders, Inc. v. ERM-North Central, Inc., 15 S.W.3d 849, 855 (Tenn. App. 1999).

To determine the reasonable rental cost of replacement capacity, Level 3 reviewed the rates in the tariffs BellSouth, the local exchange in both Nashville and Memphis, filed with the Federal Communications Commission (the "FCC") (the "BellSouth Tariff") (Exhibit P-41) and the rates published by Verizon on its website as required by 47 C.F.R. 42.10 (the "Verizon Price Guide") (Exhibit P-43). Level 3 reduced the monthly rates from the BellSouth Tariff and the Verizon Price Guide to hourly rates and multiplied the hourly rates by the capacity, in DS-3s,[1] of circuits that were completely interrupted or "down hard" as a result of Floyd's damage to the Cable for the 2.9 hours it took Level 3 to restore that traffic. The product of that calculation is Level 3's damages for its loss of the use of the Cable.

---

[1] A DS-3 is an electrical circuit which has a bit stream or data rate of approximately 44.7 megabits per second. One DS-3 is the equivalent of 672 individual phone calls. In an order issued August 19, 2004, the Federal Communications Commission ("FCC") recognized that the DS-3 is the common unit of measurement of the capacity in the telecommunications industry. In the Matter of New Part 4 of the Commission's Rules Concerning Disruptions to Communications, FCC 04-188, ET Docket No. 04-35, Report and Order (Aug. 19, 2004) ("FCC Order") (Ex. 1) at ¶ 128; see also MCI v. Patriot Engineering and Environmental, Inc., 487 F. Supp. 2d 1029, 1032 (S.D. Ind. 2007); MCI WorldCom Network Services, Inc. v. Pelcrete Constr. Inc., 2006 WL 1388490 at 2 n.1 (S.D.N.Y. May 8, 2006).

Floyd has objected to the admissibility of the BellSouth Tariff and Verizon Price Guide Level 3 used to calculate its loss of use damages. Contrary to Floyd's objection, the Tariff and Price Guide are within the exceptions to the hearsay rule and are admissible.

## **ARGUMENTS AND AUTHORITIES**

### I. **FCC REGULATION OF TARIFF RATES AND PRICE GUIDES**

The Federal Communications Act of 1934, 47 U.S.C. § 151 et seq. (the "Act"), regulates interstate telecommunications carriers. The Act requires every common carrier except connecting carriers to:

> file with the Commission and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers for interstate and foreign wire or radio communication between the different points on its own system, and between points on its own system and points on the system of its connecting carriers or points on the system of any other carrier subject to this chapter when a through route has been established, whether such charges are joint or separate, and showing the classifications, practices, and regulations affecting such charges. Such schedules shall contain such other information, and be printed in such form, and be posted and kept open for public inspection in such places, as the Commission may by regulation require….

47 U.S.C. § 203(a). Under the Act, carriers must not unreasonably discriminate between customers in charges, practices, classifications, facilities, or services. Id. § 202(a). It is unlawful for a carrier to charge rates for communications services except as provided in the rates filed with the FCC. Id. § 203(c). Indeed, the Act empowers the FCC to review filed rates and to reject any rates it deems unjust, unfair, or unreasonable. Id. § 205(a). Pursuant to its statutory authority, the FCC has promulgated regulations concerning the publication of tariffs and price guides. 47 C.F.R. § 42.10.

Prior to 2001, nondominant[2] IXCs were required to file tariffs with the FCC. On May 1, 2000, the FCC's 1996 Order detariffing the interstate, domestic interexchange services of

---

[2] "Nondominant" carriers include all non-Bell companies. Verizon is a nondominant interexchange carrier as defined by FCC regulations. 47 C.F.R. § 61.3. BellSouth is still subject to tariff filing requirements. See 47 C.F.R. §§ 61.31-61.59.

nondominant IXCs became effective. 47 C.F.R. § 61.19; FCC Public Notice, DA 00-1028, CC Docket No. 96-61 (May 9, 2000). The FCC implemented a nine-month transition period, canceling affected tariffs on January 31, 2001. Id. Instead, the FCC required non-dominant IXCs to make information about their rates publicly available. 47 C.F.R. § 42.10(a). Further, a carrier must post rate and service information to the carrier's publicly accessible website, if it maintains one. 47 C.F.R. § 42.10(b).

Verizon, as a nondominant IXC, publishes its Price Guide on its publicly accessible website, as required by federal law. BellSouth's Tariff is filed with the FCC and made publicly available, as required by federal law. The BellSouth Tariff and the Verizon Price Guide therefore fall within the exceptions to the hearsay rule in Fed. R. Evid. 803(17) (market reports or commercial publications), 803(8) (public records and reports) and the residual exception in Fed. R. Evid. 807.

## II.   THE TARIFF AND THE PRICE GUIDE ARE NOT HEARSAY

The Tariff and Price Guide are admissible evidence on the reasonable cost to obtain replacement capacity. See Fed. R. Evid. 402 ("All relevant evidence is admissible…."); United States v. Fraser, 448 F.3d 833, 836 n.2 (6th Cir. 2006) (citing Fed. R. Evid. 402). Floyd has alleged that the Tariff and Price Guide are inadmissible hearsay. However, multiple exceptions to the hearsay rule under the Federal Rules of Evidence permit Level 3 to offer the rates into evidence.

### A.   The Tariff and Price Guide Are Admissible As Market Reports or Commercial Publications

Fed. R. Evid. 803(17) excludes from the operation of the hearsay rule "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." See also White Indus., Inc. v.

4

Cessna Aircraft Co., 611 F. Supp. 1049, 1069 (W.D. Mo. 1985) (publications to which the rule applies "are those which deal with compilations of relatively straightforward **objective facts not requiring, for their statement, a subjective analysis of other facts**.") (emphasis in original) (citing VI Wigmore on Evidence §§ 1702-1708 at 38 (Chadbourn ed. 1972); 4 Weinstein's Evidence at 803-175 (1984)).

The BellSouth Tariff provides a filed and publicly available quotation and compilation of the rates and services offered by BellSouth for telecommunications services. Similarly, the Verizon Price Guide is a publicly available quotation and compilation of rates charged for telecommunication services by Verizon, a non-dominant IXC. The published rates in the Tariff and Price Guide are relied upon by the public as customers for telecommunications services and by persons in the telecommunications industry to establish the rates at which telecommunications providers offer their services.

Moreover, the prices and services published in the Tariff and Price Guide are lists of objective facts, i.e., prices charged to all customers and upon which telecom customers may rely. Indeed, Courts have long recognized the filed rate doctrine as indicative of the reliance placed upon tariffs by the public. See In re WorldCom, Inc., 2006 WL 693370 at *5-6 (Bankr. S.D.N.Y. Mar. 13, 2006) ("Customers are conclusively presumed to have knowledge of the filed tariff"). A subjective analysis of other facts would add nothing to the information contained in the Tariff and Price Guide. The rates are reliable because they are published reports of objective facts, and therefore not hearsay under Fed. R. Evid. 803(17).

### B. The Tariff and Price Guide Are Public Records and Reports

Fed. R. Evid. 803(8) provides an exemption from the hearsay rule for records and reports of public offices and agencies setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report. Courts

have been liberal in determining admissibility under Fed. R. Evid. 803(8).  Baker v. Elcona Homes Corp., 588 F.2d 551, 557 (6th Cir. 1978).

### 1. The BellSouth Tariff Falls Within Fed. R. Evid. 803(8)

Pursuant to FCC regulations, BellSouth must file its tariffs with the FCC.  See 47 C.F.R. §§ 61.31-61.59.  The FCC reviews the tariffs and then makes available the filed tariffs on its publicly available website.  See FCC, Electronic Tariff Filing System, available at http://svartifoss2.fcc.gov/prod/ccb/etfs/ (last accessed March 17, 2011).  Because the FCC has a duty to report them, BellSouth's filed tariffs fall within Fed. R. Evid. 803(8).

### 2. The Verizon Price Guide Also Falls Within Rule 803(8)

The Level 3 Price Guide also falls within the public records and reports exception to the hearsay rule.  Courts have held that the filed rate doctrine continues to apply after the FCC detariffed nondominant IXCs.  See, e.g., In re WorldCom, 2006 WL 693370 at *5.  The Court recognized that telecommunication companies make available their rates because they are ordered to do so by FCC regulations under the authority of 47 U.S.C. § 203(a) and 47 C.F.R. § 42.10.  Thus, Verizon has a legal duty to make information regarding rates and services available to the public in the Price Guide.  The FCC has the authority to review and approve all publicly available rates charged by telecom companies for their services.  See 47 U.S.C. § 205(a).  The Price Guide therefore falls under Fed. R. Evid. 803(8) and should be admitted into evidence as a public report.

### C. The Tariff and Price Guide Are Admissible Under The Residual Exception To The Hearsay Rule In The Federal Rules Of Evidence

Finally, the Tariff and Price Guide are admissible under Fed. R. Evid. 807.  Rule 807 provides that a statement not otherwise covered by the hearsay rules and exceptions "but

6
Case 1:09-cv-00082   Document 87   Filed 03/22/11   Page 6 of 9 PageID #: 1889

otherwise having equivalent circumstantial guarantees of trustworthiness" is not excluded from evidence as hearsay, if:

> (A) the statement is offered as evidence of a material fact;
>
> (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
>
> (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807.[3]  See also United States v. Wilson, 249 F.3d 366, 375-76 (5th Cir. 2001), abrogated on other grds., Whitfield v. United States, 543 U.S. 209 (2006) (admitting Bahamian bank records under Rule 807 and noting that bank documents provide circumstantial guarantees of trustworthiness because "banks and their customers rely on their accuracy in the course of their business.") (quoting United States v. Pelullo, 964 F.2d 193, 202 (3rd Cir. 1992)); Barker v. Morris, 761 F.2d 1396 (9th Cir. 1985); Schering Corp. v. Pfizer Inc., 189 F.3d 218, 232-33 (2d Cir. 1999) (noting that trustworthiness factor protects against four risks of hearsay: (1) insincerity, (2) faulty perception, (3) faulty memory, and (4) faulty narration).

The Tariff and Price Guide are evidence of the reasonable replacement cost for the capacity impacted by Floyd's damage to Level 3's Cable. The Tariff and Price Guide are more probative than any other evidence on that issue because they provide publicly available prices applicable to the rental of replacement capacity on another carrier's network for the impacted capacity. The interests of justice demand the admission of the most relevant piece of evidence on Level 3's calculation of its damages for the loss of the use of the Cable.

---

[3] The final requirement of Rule 807 is notice to the opposing party. Level 3 first produced the Tariff and Price Guide with its Initial Disclosures on February 25, 2010. Thus, Floyd has long had notice of the existence of the rates and Level 3's intent to rely on them as evidence of the costs of procuring replacement capacity. Floyd has had ample time to prepare to respond to Level 3's evidence and will not be prejudiced by the admission of the Tariff and Price Guide into evidence.

Finally, there can be no dispute that the Tariff and Price Guide possess substantial guarantees of trustworthiness. The BellSouth Tariff is filed with the FCC and the Verizon Price Guide is made publicly available pursuant to the requirements of federal law and regulations promulgated by the FCC. See 47 U.S.C. § 203(a); 47 C.F.R. § 42.10; 47 C.F.R. §§ 61.31-61.59. There is no risk of insincerity, faulty perception, faulty memory, or faulty narration in admitting such public documents into the evidence in this case. The Tariff and Price Guide are necessary evidence and should be admitted as trustworthy evidence of the reasonable cost to obtain replacement capacity on another carrier's telecommunications network.

## CONCLUSION

The BellSouth Tariff and Verizon Price Guide Level 3 used to calculate its damages for the loss of the use of the Cable are readily ascertainable by resort to the published prices whose accuracy cannot reasonably be questioned. They are therefore not hearsay and are admissible.

Respectfully submitted,

s/ James J. Proszek
James J. Proszek, *pro hac vice*
Brandon B. Rule, *pro hac vice*
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone (918) 594-0400
Facsimile  (981) 594-0505

and

John R. McCann
**BURCH, PORTER & JOHNSON, PLLC**
130 North Court Avenue
Memphis, TN  38103
Telephone (901) 524-5101
Facsimile  (901) 524-5024

**ATTORNEYS FOR PLAINTIFF
LEVEL 3 COMMUNICATIONS, LLC**

# **CERTIFICATE OF SERVICE**

On the 22nd day of March 2011, I electronically filed this document through the CM/ECF system, which will send a notice of electronic filing to:

>David A. Bates
>Creighton N. Fossett
>DUBOIS, DUBOIS & BATES, P.C.
>810 South Garden Street
>Columbia, TN  38402
>
>*dbates@duboislegal.com*
>*nfossett@duboislegal.com*

            s/ James J. Proszek

1217326.1:912444:01357