# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, | ) |
| Plaintiff, | ) Case No. 1:09-0082 |
| | ) Judge Trauger |
| v. | ) |
| MICHAEL R. FLOYD d/b/a FLOYD & FLOYD CONTRACTORS, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

On February 7, 2011, the court denied the defendant's Motion for Summary Judgment in this case in which the plaintiff, Level 3 Communications, LLC, a telecommunications provider, claims that the defendant, Michael R. Floyd, d/b/a Floyd & Floyd Contractors, trespassed on its telecommunications cable (the "Cable") and negligently damaged it during excavation work on a residential subdivision in Columbia, Tennessee on August 15-16, 2007. (Docket No. 40.) Among other things, the court ruled that genuine issues of material fact precluded the court from finding in the defendant's favor on the issue of damage causation. (*Id.* at 6-14.) In advance of the March 29, 2011 trial of this case, the parties have, among other things, briefed several evidentiary "objections," the most lengthy and notable of which is the defendant's objections to the proposed direct testimony of the plaintiff's expert, Walt Kelly. (Docket No. 84). The court will address the objections to Kelly's testimony before considering the other objections that have been briefed.

1

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2010, the plaintiff timely filed Walt Kelly's expert report. (Docket No. 84 Ex. 2.) In that report, Kelly, who is a "consultant specializing in underground facility damage prevention," provided (1) a detailed account of his qualifications/publications, (2) the "statutes, regulations, and industry standards" that he had reviewed, (3) a brief "summary of pertinent facts" that relied upon the pleadings and early discovery in this case, and (4) seven opinions or means by which the defendant failed to abide by statute, regulation, or industry standard in conducting the excavation work. (*Id.*) The defendant declined to take Kelly's deposition upon reviewing his expert report. (Docket No. 84 at 1.)

On March 15, 2011, the plaintiff filed Kelly's proposed direct expert testimony, which is laid out differently from the expert report. (Docket No. 70.) Kelly does not discuss his qualifications as an expert (which are apparently unchallenged) or the materials he reviewed but, rather, he launches immediately into a thorough discussion of the facts of this case. (*Id.*) With the same underlying premise that the defendant failed to act reasonably in performing the excavation, Kelly discusses the admissions made by Michael Floyd (owner of the defendant company) and Anthony Howell (project foreman), in their depositions regarding their awareness of the Cable prior to excavation work and the fact that they continued working after the Cable was hit. (*Id.* at 1-3, 6.)

Kelly also discusses the steps that the plaintiff took to avoid this incident, apparently relying on the depositions of Level 3 witnesses Jeff North and Allen Hannah and photographs of the scene, which show, among other things, that the plaintiff laid down warning tape that had been "excavated through." (*Id.* at 3-5.) In essence, whereas the factual summary in the expert

2

report is "bare bones" and relies on the limited record available at the time, the factual summary provided in the proposed direct testimony is a thorough recounting (from the plaintiff's perspective) of the relevant events at the job-site leading up to the August 16, 2007 outage.

Kelly's proposed testimony goes on to offer, in substance, the same seven opinions supporting the argument that the defendant did not exercise reasonable care in conducting the excavation work. That is, that the defendant failed to: (1) properly plan the excavation, (2) train its staff in the relevant rules and regulations, (3) abide by its agreement with Level 3 not to excavate without a Level 3 representative present, (4) expose the Cable and conduits "by safe and acceptable means," (5) or, assuming exposure of the Cable, dig reasonably, (6) notify Level 3 of the strike incident when it occurred and (7) maintain "a clearance between Level 3's conduit bank and cable." (Docket No. 70 at 7-18; Docket No. 84 Ex. 2 at 11-20.) While this section of the proposed expert testimony takes more of a narrative form, it follows the same pattern as the expert report; that is, providing the opinion and then citing the statute, regulation, or industry practice that supports the point of view. (*Id.*)

On March 20, 2011, the defendant filed its objections to Kelly's proposed testimony. (Docket No. 84.) The defendant argues that the plaintiff, without ever filing a supplemental expert report, has impermissibly added "facts, opinions and authorities" to Kelly's testimony. (*Id.* at 2.) In making this case, the defendant first recounts all of the facts/testimony cited in the direct testimony that were not discussed in the expert report. (*Id*. at 2-7.) Then, the defendant lists the "legal and industry standards not in expert disclosure but included in witness statement," before concluding with a list of the "opinions and conclusions not in expert disclosure but included in witness statement." (*Id.* at 7-11.)

## ANALYSIS

I.  **Objections to Kelly's Direct Testimony**

The defendant argues that the "witness statement of Mr. Kelly should be excluded to the extent that it provides facts, legal authorities, industry standards and practices, conclusions and opinions that are not contained in Kelly's expert disclosure." (*Id.* at 12.)  The defendant argues that these facts, authorities and conclusions should have been disclosed in a supplemental expert report, and, with the disclosure of these materials only two weeks before trial, "defendant is now without sufficient time . . . to review and conduct discovery in regard to Mr. Kelly's newly disclosed opinions and information." (*Id.*)

The defendant chiefly relies on Federal Rule of Civil Procedure 26(a)(2)(B), which requires that an expert report contain a "complete statement of all opinions the witness will express and the basis and reasons for them," along with the "facts and data" supporting those opinions.  Rule 26 also contains a "duty to supplement," which extends "to information included in the report." Fed. R. Civ. P. 26(e)(2).  Under Rule 37(c)(1), the court, in its discretion, may impose the appropriate sanction for a failure to timely supplement, although no sanction is appropriate if the failure to supplement was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

The defendant argues that the plaintiff blatantly ignored the duty to supplement Kelly's testimony and, instead, foisted his greatly expanded testimony upon the defendant on the eve of trial. (Docket No. 84 at 13.)[1]  Therefore, the defendant argues, the court, under Rule 37, must

---

[1] The defendant also heavily cites from *Campos v. MTD Products*, 2009 WL 2252257 (M.D. Tenn. July 24, 2009)(Trauger, J.), in which the court also discussed Rule 26 and the duty to supplement. (Docket No. 84 at 14-19.)  The court is very familiar with *Campos* and does not

4

"limit Mr. Kelly's testimony to only the information and opinions expressly provided in his August 13, 2010 expert disclosure." (*Id.* at 20.)

The court does not find these objections persuasive. First, it is crucial to recognize that, in both the expert report and the proposed testimony, Kelly is offering, in substance, the same seven opinions regarding how the defendant failed to exercise reasonable care. This clearly distinguishes this case from a case like *Campos*, where the court sanctioned the plaintiff for failing to timely disclose an expert at all, or for failing to timely produce anything resembling a substantive expert report. 2009 WL 2252257, at *8-11. Here, put simply, the defendant is challenging the fact that the plaintiff's expert, while offering the same core opinions, has, without providing a supplemental report, expanded his proposed testimony to take a more narrative tone and to include facts that, while now well known to the defendant, were not available at the time that the initial report was disclosed. Taking each set of the defendant's objections in turn will illustrate the point that a sanction is not appropriate.

### A. Expanded Factual Summary

As the defendant concedes, the expanded factual summary provided by Kelly in his proposed testimony is based upon "facts [that] were disclosed during the depositions of various witnesses." (Docket No. 84 at 6-7.) While the plaintiff never provided an updated expert report showing that Kelly had reviewed these depositions, the testimony contained within those depositions and cited by Kelly is certainly very familiar to the defendant. Indeed, the same

---

view that case as particularly helpful here. While *Campos* also involved Rule 26 and the duty to supplement, the court's conclusions that certain experts would not be allowed to testify at trial rested on the complete failure of the plaintiff to either disclose the expert or provide the initial expert report in a timely manner. 2009 WL 2252257, at *8-11.

factual background will be provided by other witnesses for the plaintiff. As a practical matter, if the court limited Kelly's testimony to the facts as stated in his expert report, while all other witnesses were allowed to opine based on the full factual record, his testimony would sound odd and confusing. Any violation of the supplementation rules here is not severe enough to warrant this degree of disruption to the fact-finding process.

**B.     Additional Industry or Legal Standards**

The defendant provides seven instances in which Kelly's proposed testimony allegedly relies on legal and industry standards not discussed in the expert report. (Docket No. 84 at 7-9.) Two of these instances involve Kelly's reference to a provision of Tennessee's "One-Call" statute. (*Id.*) However, in the expert report, Kelly repeatedly cited to the One-Call statute, including this specific provision, as supporting his opinions in this case. (Docket No. 84 Ex. 2 at 15.) There is simply no basis for the defendant to be surprised that Kelly's opinions would be supported by reference to the One-Call statute.

The other challenged testimony refers to industry standards that Kelly cites for historical background on the issue of governmental response to the problem of excavation damage to telecommunication systems. (Docket No. 84 at 7-9.) And, with only one exception (the 2003 Department of Labor Safety Bulletin), all of these industry standards are either cited in the expert report as "testimony, documents and opinions reviewed" by the expert or are explicitly relied upon by Kelly in his report. (Docket No. 84 Ex. 2 at 8-9, 14.) In sum, while the proposed direct testimony "fleshes out" the more bare bones expert report, the testimony is almost entirely based on information and materials that were timely revealed to the defendant. While the plaintiff should have disclosed that Kelly would be relying on the 2003 Department of Labor Safety

6

Bulletin, the bulletin (along with various other materials) is used in the testimony as background, and a sanction for failing to timely supplement with this information will not be imposed.

## C. Additional Opinions and Conclusions

The defendant provides seven instances where Kelly's proposed testimony allegedly offers an additional opinion or conclusion not contained in the expert report. (Docket No. 84 at 9-11.) This is, again, an issue of the defendant elevating form over substance.

The opinions challenged by the defendant are all contained, in one way or another, in the expert report; they are just stated somewhat differently, in somewhat less detail, or in a less narrative fashion. Indeed, all of the challenged "opinions and conclusions" in the direct testimony are some variation on the theme that Floyd excavated with a trackhoe and bucket directly over a heavily marked conduit bank and Cable and that this conduct reveals a failure to: (1) plan, (2) respect the plaintiff's needs and prior requests, (3) dig carefully, (4) abide by the One-Call law, and (5) maintain necessary clearance. (Docket No. 9-11.) Simply, there is nothing new here. These are the same basic opinions that are offered in the expert report, just simply expressed in a narrative style or employing testimony of which the defendant is well aware.

In sum, while perhaps the plaintiff should have clarified that Kelly would not be relying on the nascent record in this case, any failure to supplement here does not warrant a sanction, particularly not the requested sanction of essentially requiring Kelly to read his non-narrative expert report into the record at trial. The opinions stated in the expert report and in the proposed testimony are the same, the legal and industry authorities relied upon were, almost without exception, disclosed in the expert report, and the factual summary, while considerably expanded,

7

does not provide any information about which the defendant was unaware. Therefore, the defendant's objections (Docket No. 84) are **OVERRULED**.

## II. Additional Objections

### A. Hearsay Objections to the Tariff and Price Guides

In the proposed Pretrial Order, the defendant objected, on hearsay grounds (among others), to the introduction of the BellSouth tariff and the Verizon price guide, which contain the rates charged by those companies and which the plaintiff used to calculate its loss of use damages. (Docket No. 83 at 15-16; Docket No. 87 at 1-2.) In its brief in response, the plaintiff maintains that both the BellSouth tariff and the Verizon price guide are required, by federal law, to be made public, and, therefore, multiple exceptions to the hearsay rule apply. (Docket No. 87 at 4.) The court finds, at least, that the tariff report and price guide are "market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" and, therefore, the materials are admissible under the "market reports" and "commercial publications" exception to the hearsay rule. Fed. R. Evid. 803(17). Therefore, the defendant's hearsay objections to this evidence are **OVERRULED**.

### B. Anthony Howell

In the proposed Pretrial Order, the defendant objected to the introduction of deposition testimony from Floyd's foreman on the Columbia, Tennessee project, Anthony Howell, during the plaintiff's case in chief. (Docket No. 83 at 12; Docket No. 88 at 1.) The defendant has objected on the grounds that the plaintiff has not shown that Howell is unavailable. (*Id.*)

The plaintiff recognizes that unavailability is often a prerequisite under the Federal Rules

in order to read deposition testimony into the record at trial but argues that an adverse party may use the deposition of its opponent's "managing agent . . . for any purpose" regardless of whether the witness is unavailable. Fed. R. Civ. P. 32(a)(3). While Howell may have been Floyd's "managing agent" at the time of incident, his status at the time of his August 17, 2010 deposition (which is the relevant date for purposes of the rule) is unclear; indeed, the defendant maintains that Howell is a "non-party" witness. (*Id.*; Docket No. 83 at 12.) There is not sufficient evidence to rule on this objection at this stage. The defendant may renew its objection at trial, if Howell's deposition is offered and the plaintiff has not made the requisite showing.[2]

### C. Jozelle Patterson-Burwell

In the proposed Pretrial Order, the defendant objected to the introduction of favorable deposition testimony from Jozelle Patterson-Burwell, Floyd's "repair cost" expert, during the plaintiff's case in chief. (Docket No. 83 at 12; Docket No. 89 at 1.) The defendant has objected on the grounds that the plaintiff has not shown that Patterson-Burwell is unavailable. (*Id.*)

The plaintiff argues that Patterson-Burwell is the defendant's "agent" and, therefore, statements in her depositions are admissible as admissions of a party opponent regardless of her availability. (Docket No. 89 at 2 citing Fed. R. Civ. P. 32(a)(2) and *Teva Pharmaceuticals, USA, Inc. v. Abbott Labs*, 2008 WL 4809116, *1 (D. Del. Nov. 5, 2008)). The plaintiff has not provided any controlling authority for its argument that a retained expert is an "agent" of a party for purposes of the hearsay rule, and the court's interpretation of the plain language of Federal

---

[2]This same ruling applies to the plaintiff's similar objections to the defendant's introduction of Jeff North's deposition testimony during the defendant's case in chief. (Docket No. 71.) If the defendant attempts to introduce North's testimony without making the requisite showing, the plaintiff may renew its objections.

Rule of Evidence 801(d)(2) is that an expert is not an agent of a party for purposes of that rule. *See also Kirk v. Raymark Industries*, 61 F.3d 147, 164 (3rd Cir. 1995)(concluding that an expert does not qualify as an agent for purposes of the hearsay rule). The plaintiff will have sufficient opportunity to raise Patterson-Burwell's favorable deposition testimony with her on cross-examination. Therefore, the defendant's objection on this point is **SUSTAINED**.

It is so ordered.

Enter this 23rd day of March 2011.

ALETA A. TRAUGER
United States District Judge